**SO ORDERED.**

**SIGNED this 20 day of July, 2009.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CURTIS RAY GUTHRIE and** | ) | **Case No. 08-13000** |
| **VERONA FAYE GUTHRIE,** | ) | **Chapter 13** |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

### CORRECTED ORDER GRANTING DEBTORS' MOTION
### TO ALLOW SUBSTITUTION OF COLLATERAL,
### ENDORSEMENT OF INSURANCE CHECK,
### AND TURNOVER OF PROCEEDS

Debtors Curtis Ray Guthrie and Verona Faye Guthrie move for an order requiring their car

financier, Easy Credit Auto Sales, Inc. ("Easy Credit"), to endorse a motor vehicle insurance check

to them so that they may purchase a replacement vehicle.[1]  Easy Credit objects, arguing that

allowing debtors to take the insurance proceeds to purchase another vehicle without paying off Easy

_____

[1] Dkt. 35.

1

Credit would result in unlawfully forcing Easy Credit to finance another vehicle for Debtors.[2] The Trustee objects to the extent allowing a replacement collateral permits the debtors to incur additional debt which will strain the debtor's already precarious ability to make their Chapter 13 plan payments and may prejudice unsecured creditors because funds that would otherwise be distributed to them will instead be paid either to Easy Credit or the new auto lender.[3]

The Court convened an evidentiary hearing on this motion on May 27, 2009. The Guthries appeared in person and by counsel, Todd Allison. Easy Credit appeared by counsel W. Rick Griffin. The Trustee appeared by counsel Christopher T. Micale. The debtors and Easy Credit representative Rick Hill testified. Easy Credit's Exhibits A and B were admitted into evidence by stipulation. After hearing closing arguments, the Court gave counsel 10 days to submit letters on any authority. The Trustee and Easy Credit each filed a letter of authority.[4] Debtors did not.

On June 18, 2009, following receipt of the post-trial letters of authority, the Court took the matter under advisement. After careful consideration, the Court makes its findings of facts and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

<u>Findings of Fact</u>

Debtors filed their Chapter 13 bankruptcy case on November 19, 2008. The plan has yet to be confirmed. Within 910 days of the date of the petition, Debtors purchased a used 2002 Chevrolet Blazer from Easy Credit and granted Easy Credit a purchase money security interest in it. Debtors signed a Retail Installment Sales Contract (the "Contract") promising to pay some $8,544.05 for the

---

[2] Dkt. 41.

[3] Dkt. 57.

[4] Dkt. 57 and 58.

2

vehicle, inclusive of taxes, contract fees, and the dealer document fee. The Contract specifies that the buyer bears the risk of damage or loss of the vehicle and that "neither the loss of nor damage to the motor vehicle shall release you from your obligations under the Contract." The Contract also requires the debtors to maintain insurance coverage on the vehicle. The terms of the security agreement further state that "You also give us *a security interest* in the proceeds of any physical damage insurance policy on the vehicle . . . ."[5] Debtors made a $500 down payment and owe, as of the date of filing, $7,309.09.

After the petition date, the vehicle was totaled in an accident. Debtors made an insurance claim which, after the insurer withheld their $500 deductible, amounted to $5,089 payable to "Easy Credit Auto Sales and Curtis Guthrie, Only."[6] Easy Credit received the insurance proceeds from Debtor's insurance company as the loss payee and claims it is entitled to keep it as proceeds of the collateral.

Debtors seek permission to use the insurance proceeds to purchase a vehicle as it is difficult for them to get to and from work with only one vehicle. Easy Credit objects to the debtors' replacing the vehicle with the insurance money because it fears that the debtors will not be able to acquire a suitable vehicle without having to incur additional debt and impairing Easy Credit's secured position. The Trustee objects that the debtors' incurring additional debt will prejudice the unsecured creditors because funds that would otherwise be distributed to them will instead be paid either to Easy Credit or the new auto lender. The debtors have no proposed automobile to purchase as of the hearing date, but stated they were trying to locate a vehicle they could buy for the amount

---

[5] Ex. A (emphasis added).

[6] Ex. B.

of the insurance proceeds.

The debtors reside in Burrton, Kansas. Mrs. Guthrie works as a nurse in Hutchinson; while Mr. Guthrie, a recent heart patient, works as a maintenance man in a factory in McPherson. Mrs. Guthrie's place of work is about 15 miles from their home; Mr. Guthrie's work is about 40 miles away. Mrs. Guthrie can be called in to work at virtually any time. It does not seem practicable or economical for the Guthries to operate with only one car, given the significant distances between their work and their home and their different work schedules. The Court is convinced that they need a second vehicle.

Analysis

The Guthries seek to use their insurance proceeds to replace the destroyed vehicle. Section 363 governs the use, sale or lease of property of the estate by the trustee.[7] Section 1303 provides that chapter 13 debtors have the same rights and powers that a trustee does under § 363(b), (d), (e), (f), and (l). Thus, the Guthries may, upon receiving court approval, use or sell estate property outside the ordinary course of business. They may do this so long as it is not inconsistent with any order conditioning or granting relief from the stay. If they use property in which another entity claims an interest, the court must prohibit or condition such use to adequately protect the entity's interest.[8]

Easy Credit argues that the insurance proceeds are not cash collateral because the debtors

---

[7] Unless otherwise noted, all statutory references in the text are to Title 11 of the United States Code.

[8] *See* § 363(e), it provides that ". . . on request of an entity that has an interest in property ... proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . ."

4

claimed the vehicle as exempt and it is no longer property of the estate. Accordingly, the proceeds are also exempt and therefore not property of the estate. Easy Credit relies on *In re Van Stelle* for this position.[9] In *Van Stelle*, the substitution of collateral was proposed after the debtors' plan was confirmed. The debtors in that case wrecked their vehicle during the interval between the commencement of their case and the confirmation of their plan, but did not amend their plan to reflect this turn of events before confirmation. When they sought to apply the proceeds of the old car to purchasing a new one after confirmation, the court held that because the debtors' plan had been confirmed and provided for estate property to revest in them at confirmation per § 1327(b), the proceeds were no longer property of the estate and therefore could not be cash collateral under § 363(e).

The facts in the present case are substantially different. Here, the Guthries' plan has not yet been confirmed and, when it is, it will provide for a delay of the vesting of the estate's property in the debtors until the case is closed. Unless the proceeds are excluded from the property of the estate for some other reason, they remain subject to the Court's jurisdiction as property of the estate.

Property of the estate is defined in § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 1306(a)(1), however, expands a Chapter 13 estate to include "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." Thus, even though the car was exempt, the insurance proceeds are clearly property of the kind

---

[9] *In re Van Stelle*, 354 B.R. 157 (Bankr. W.D. Mich. 2006).

specified in § 541 that the Guthries acquired after they filed their bankruptcy petition.[10]  In Kansas, the proceeds of exempt assets only retain their exempt character when they are reinvested in other exempt property.[11]

Because the debtors insured the Blazer and designated Easy Credit as loss payee, Easy Credit retains a security interest in the Blazer's proceeds under the terms of the Contract and KAN. STAT. ANN. § 84-9-315(a) and (c) (2008 Supp).  This security interest is continuously perfected so long as the security interest in the underlying collateral was perfected.  No one suggests that it was not. Contrary to the law in some states, Kansas law does not set over to the lender an ownership interest in insurance proceeds.  Instead, as Easy Credit's own documents provide, all Easy Credit has here is a security interest in them.  The proceeds remain payable to the debtor, subject to the claim or lien of the lender.  The proceeds are therefore property of the Guthries' bankruptcy estate by operation of § 541(a)(6) and § 1306.  Because Easy Credit had a perfected security interest in the Blazer, its post-petition proceeds are subject to Easy Credit's lien by virtue of state law and § 552(b)(1).  They are, therefore, also cash collateral that cannot be used without Easy Credit's permission unless the debtors offer adequate protection of Easy Credit's interest in them under § 363(c)(2) and (e).

Easy Credit argues that if the debtors are permitted to spend the insurance proceeds to replace their vehicle, Easy Credit's collateral position will be impaired and it will be effectively denied adequate protection as required by § 363(e).  As a 910 lender, Easy Credit must be paid the amount of its claim in full because the hanging paragraph in § 1325(a)(9)(*) precludes debtors from

---

[10] *In re Hoffmeister*, 191 B.R. 875 (D. Kan. 1996), *aff'd,* 98 F.3d 1349 (Table) (10th Cir. 1996) (proceeds do not automatically follow the car; rather, § 1306 brings them under the court's jurisdiction, so that any claim of exemption must be determined at the time of acquisition).

[11] *Independence Savings & Loan Ass'n v. Sellars*, 149 Kan. 652, 88 P.2d 1059 (1939).

having its allowed secured claim crammed down.[12] Thus, whether or not Easy Credit receives the insurance proceeds, it will still be entitled to be paid its entire claim, just as it would have been had debtors opted to surrender the Blazer under § 1325(a)(5)(C).[13] If the debtors spend the insurance check on a replacement car and Easy Credit's security interest in the proceeds is transferred to the replacement car, the debtors will still owe Easy Credit the entirety of Easy Credit's claim, secured by a vehicle equal in value to the Blazer when it was destroyed. Easy Credit's position will not have changed at all.

With regard to the Trustee's concern about diluting the unsecured creditors' recovery, there is no indication at this time that the debtors intend to buy a car for an amount that exceeds the amount of the check, nor does it appear that they have the means to do so. Doing so would require the debtors to seek and obtain the Trustee's approval under § 1305(c). The Court is more concerned that the debtors will be unable to complete their chapter 13 case without the transportation that they clearly need. The Court also notes that these debtors are above-median debtors who are already obligated to make substantial payments to their unsecured creditors by virtue of their pre-petition disposable income. This suggests that the debtors may not be in a position to take on further debt because they already have such a heavy payment burden. Moreover, as the trustee points out, if the debtors incur a further purchase money loan to acquire a replacement vehicle, questions about the relative priority of the 910 Loan and the post-petition loan would remain.

---

[12] Section 1325(a)(9)(*) provides that the provisions of § 506 do not apply in this instance. Thus, this loan may not be crammed down to the value of the vehicle; rather, Easy Credit's allowed claim must be treated as fully secured and paid in full. *Daimler Chrysler Fin. Serv. Americas, L.L.C. v. Ballard (In re Ballard)*, 526 F.3d 634, 638 (10th Cir. 2008).

[13] *Ballard*, 526 F.3d at 640.

7

On balance, the rights of the parties as they are outlined in the Bankruptcy Code will be best balanced and protected if the debtors are permitted to utilize the insurance proceeds to purchase, for cash, a replacement vehicle. The vehicle must have a value of not less than **$5,589**, the sum of the insurance check and the withheld deductible. This will require the debtors to expend $500 from another source. Easy Credit's lien on the insurance proceeds shall transfer to and become a first priority lien on any such replacement vehicle. The Court finds that such a replacement lien is the indubitable equivalent of what Easy Credit had as security immediately prior to the wreck that destroyed the Blazer: a first lien on a **$5,589** car. Thus, Easy Credit's interests in the Blazer's proceeds will be adequately protected.

<u>Conclusion</u>

The Court GRANTS the debtors' motion on the forgoing terms and ORDERS as follows. Both Easy Credit and the debtors shall make and execute all documents and instruments necessary to obtain payment of the insurance proceeds to the debtors. Easy Credit shall endorse the insurance check to the debtors so they may use them to acquire a vehicle on the terms set forth above. The debtors shall execute a security agreement, an application for secured title, and any other necessary documents to attach and perfect a first lien in favor of Easy Credit to the replacement vehicle. Debtors shall further provide to Easy Credit, documentation or proof of their purchase of a replacement vehicle having a value of at least **$5,589**. Finally, the debtors shall maintain insurance on the replacement vehicle as required by the terms of Easy Credit's contract and Kansas law. Debtors shall not incur additional credit to replace the Blazer absent the approval of the Trustee and the Court and compliance with the applicable provisions of the Bankruptcy Code.

# # #

8